OPINION
{¶ 1} Defendant-appellant, Walter Reiner ("Reiner"), appeals from the judgment of the Franklin County Court of Common Pleas, which entered summary judgment in favor of plaintiff-appellee, Werner Niehaus ("Niehaus"), and defendant-appellee, The Columbus Maennerchor (the "Maennerchor"), on Niehaus' claim and Reiner's cross-claims regarding the enforceability of a real estate purchase contract.
 {¶ 2} The Maennerchor is a German singing and cultural organization that was founded in Columbus, Ohio in 1848. The Maennerchor, a non-profit corporation duly incorporated under Ohio law, has approximately 400 members and owns and occupies real property located at 966 and 976 South High Street in Columbus, where it has operated for over 80 years. The Maennerchor's operations include a restaurant, banquet facilities, and rooms devoted to musical and cultural events. The Maennerchor is governed by a 16-member board of directors (the "board"). In late 2006, at the time of the events leading up to this lawsuit, defendant-appellee, Eugene C. Hinterschied ("Hinterschied"), was a member and the president of the Maennerchor, Reiner was a member and director of the Maennerchor, and Niehaus was a member of the Maennerchor. During the pendency of this lawsuit, at the conclusion of Hinterschied's term as president, Niehaus was elected to and assumed that office.
 {¶ 3} At the time of the events underlying this action, the Maennerchor was in the midst of a financial crisis and had significant debt, including debt exceeding $600,000 from loans to the Maennerchor by various members. It could not discharge the debt because of its lack of cash. Much of the Maennerchor's debt was secured by *Page 3 
mortgages on the Maennerchor's real property. As a result of its financial problems, the board was considering proposals to determine the future of the Maennerchor, including proposals that involved the potential sale of some or all of the Maennerchor's property.
 {¶ 4} At a regular membership meeting on October 10, 2006, the Maennerchor members voted to accept a turn-around plan proposed by Reiner. The plan included hiring a new manager and kitchen staff and an additional $180,000 in loans to pay off vendors and recapitalize the Maennerchor during the turn-around period. Nevertheless, at a November 7, 2006 special board meeting, the board passed a motion to sell all or part of the Maennerchor's property. At that meeting, Reiner stated that the members who had lent money to the Maennerchor ("lender-members") are vested in the Maennerchor and should be involved in buying it. At a regular meeting of the Maennerchor members on November 14, 2006, the members passed a resolution, consistent with the board's action, to sell all or a part of the Maennerchor's land and buildings for a price equal to or greater than $1,700,000 with a target of $2,200,000, and to authorize Hinterschied to enter into a contract, subject to members' approval, to sell at or above that price and upon other commercially reasonable terms or conditions.
 {¶ 5} On or about December 7, 2006, Marilyn Reiner, the wife of Reiner's cousin, mailed a one-page informational flyer to at least some Maennerchor members. The flyer encouraged members to attend a December 12, 2006 regular corporation meeting, informed members of the board's actions subsequent to the October 10, 2006 meeting regarding the turn-around plan, and described a "Survival Plan" being proposed by the lender-members. The Survival Plan included the formation of an LLC to assume the Maennerchor's debts, upgrades to the Maennerchor's property, and *Page 4 
preservation of the Maennerchor's traditions and German culture. The flyer indicated that the LLC would cause the Maennerchor's debts to be paid, provide management for the Maennerchor restaurant and building, and provide Maennerchor members with restaurant and banquet discounts. Although Mrs. Reiner claims to have sent the flyer to all members, 21 Maennerchor members have executed affidavits claiming that they did not receive Mrs. Reiner's flyer prior to the December 12, 2006 meeting.
 {¶ 6} On or about December 11, 2006, Reiner, acting on behalf of the unformed LLC, submitted to the board a contract (the "purchase contract") to purchase all of the Maennerchor's real property for a purchase price of "[t]he lesser of $1,100,000 or the accumulated total debt of The Columbus Maennerchor." The purchase contract identifies the buyer as an "LLC to be created," and Reiner signed the purchase contract as "Rep. for participating Lenders and Members." The purchase contract does not identify the seller. Pursuant to the terms of the purchase contract, the Maennerchor would be permitted to use the space for its activities, and the buyer would fund the operation of the restaurant and banquet hall in the amount of $24,999, to be evidenced by a cognovit note and mortgage. This lawsuit revolves around the validity of the Maennerchor's actions in response to the purchase contract.
 {¶ 7} The board met on December 11, 2006, and voted against Reiner's proposal. A regular membership meeting was held on December 12, 2006, at which those members present voted (49 to 33) to approve Reiner's proposal and the purchase contract. At some time between December 17, 2006 and December 22, 2006, despite an express board resolution to postpone signing the purchase contact, Hinterschied signed the purchase contract, purportedly on behalf of the Maennerchor. On January 6, *Page 5 
2007, the board voted 8 to 7, with Hinterschied casting the tie-breaking vote, to ratify Hinterschied's signing of the purchase contract.
 {¶ 8} Of primary importance here is the validity of the December 12, 2006 membership vote to approve the purchase contract. While Reiner contends that the purchase contract was properly authorized by the Maennerchor board and members, Niehaus and the Maennerchor maintain that the purchase contract is invalid as a matter of law, based on non-compliance with the Maennerchor constitution and R.C. Chapter 1702.
 {¶ 9} Niehaus commenced this shareholders' derivative action against the Maennerchor and Hinterschied on January 18, 2007, alleging that the Maennerchor's purported acceptance of the purchase contract violated statutory provisions, including R.C. 1702.39 and 1702.301, as well as provisions of the Maennerchor constitution. In his verified complaint, Niehaus prayed, in part, for the court to enjoin the Maennerchor and Hinterschied from closing on the purchase contract or from otherwise disposing of the Maennerchor's property in any manner inconsistent with R.C. 1702.39, 1702.301, and the Maennerchor constitution. Additionally, Niehaus prayed for a declaratory judgment that the board and member votes on the purchase contract were void for failure to comply with the statutory requirements. Along with his complaint, Niehaus filed a motion for a temporary restraining order and preliminary injunction. On January 19, 2007, the trial court issued a temporary restraining order, consistent with Niehaus' prayer for injunctive relief, enjoining the Maennerchor from closing on the purchase contract, and scheduled a hearing on Niehaus' motion for a preliminary *Page 6 
injunction. The Maennerchor filed its answer to Niehaus' complaint on February 20, 2007.
 {¶ 10} On January 25, 2007, with leave of the trial court, Reiner intervened in this action as a new party defendant. In addition to filing an answer to Niehaus' claims, Reiner asserted cross-claims against the Maennerchor for a declaration that the Maennerchor and Reiner entered into a valid purchase contract, which was duly authorized by the Maennerchor members and board, and for an order of specific performance or monetary damages for breach of contract. The Maennerchor, with new counsel, filed an answer to Reiner's cross-claims on March 29, 2007, denying all of Reiner's allegations beyond the content of the purchase contract.
 {¶ 11} On April 2, 2007, at a special meeting of the board subsequent to Niehaus' election as president, the board adopted a resolution by which it rejected the purchase contract in its entirety. Two days later, Niehaus withdrew his motion for a preliminary injunction.
 {¶ 12} On July 2, 2007, Reiner moved the court for a temporary restraining order and preliminary injunction as a result of efforts by the Maennerchor to remove him as a member and director. On that date, the trial court issued a temporary restraining order and scheduled a hearing on Reiner's request for a preliminary injunction. On July 17, 2007, Reiner amended his cross-claims to assert additional cross-claims for declaratory and injunctive relief and for monetary damages arising out of the Maennerchor's attempts to expel him from membership and to remove him as director. A magistrate conducted a preliminary injunction hearing on July 30 and 31, and August 1 and 2, and issued a decision denying Reiner's motion for a preliminary injunction on August 9, *Page 7 
2007. The following day, Reiner voluntarily dismissed his claims for relief relating to the Maennerchor's efforts to remove him as a member and director and withdrew his motion for a preliminary injunction. Reiner resigned as a member and director of the Maennerchor on August 13, 2007.
 {¶ 13} On August 15, 2007, the Maennerchor filed a motion for summary judgment on Reiner's cross-claims. On August 20, 2007, Niehaus filed motions for summary judgment on his claims against the Maennerchor, Hinterschied, and Reiner, and Reiner filed a motion for summary judgment on his cross-claims against the Maennerchor. The parties fully briefed each of the motions for summary judgment.
 {¶ 14} On November 7, 2007, the trial court issued a decision and entry, in which it granted in part Niehaus' motions for summary judgment, granted the Maennerchor's motion for summary judgment, and denied Reiner's motion for summary judgment. The trial court stated that, other than Niehaus' request for attorney fees, the only issue to be adjudicated was the validity of the purchase contract. The trial court determined that the purchase contract was not authorized by the Maennerchor membership in accordance with the Maennerchor constitution and R.C. 1702.39(A)(1) and was, therefore, invalid as a matter of law. The trial court also referred the case to a magistrate for a hearing on Niehaus' entitlement to attorney fees and the amount of those fees. In its decision and entry, pursuant to Civ. R. 54(B), the trial court expressly determined and certified that "there is no just reason for delay." Reiner filed a timely notice of appeal, after which the trial court stayed any further action on Niehaus' request for attorney fees. *Page 8 
 {¶ 15} On February 4, 2008, Niehaus moved this court to dismiss Reiner's appeal, arguing that this court lacks jurisdiction because the trial court's November 7, 2007 decision and entry was not a final appealable order. Despite the trial court's Civ. R. 54(B) certification that there was "no just reason for delay," Niehaus contends that the trial court's judgment was not final and appealable because the court had not addressed his request for attorney fees. Before addressing the merits of Reiner's appeal, we must first address Niehaus' motion to dismiss.
 {¶ 16} Section 3(B)(2), Article IV, Ohio Constitution limits an appellate court's jurisdiction to the review of lower courts' final orders. Thus, it is well-established that an order must be final before an appellate court has jurisdiction to review it. Gen. Acc. Ins. Co. v.Ins. Co. of N. Am. (1989), 44 Ohio St.3d 17, 20. "`A final order * * * is one disposing of the whole case or some separate and distinct branch thereof.'" Noble v. Colwell (1989), 44 Ohio St.3d 92, 94, quotingLantsberry v. Tilley Lamp Co. (1971), 27 Ohio St.2d 303, 306. If an order from which an appeal is taken is not final and appealable, the appellate court must dismiss the appeal. Farmers Mkt. Drive-In ShoppingCtrs. v. Magana, Franklin App. No. 06AP-532, 2007-Ohio-2653, ¶ 10, citing Renner's Welding Fabrication, Inc. v. Chrysler Motor Corp.
(1996), 117 Ohio App.3d 61, 64. See, also, McClary v. M/I SchottensteinHomes, Inc., Franklin App. No. 03AP-777, 2004-Ohio-7047, ¶ 15.
 {¶ 17} The Supreme Court of Ohio has set forth a two-step analysis for determining whether an order is final and appealable. See Gen. Acc. Ins.Co. at 21. First, the appellate court must determine whether the order constitutes a final order as defined by R.C. 2505.02. If the order complies with R.C. 2505.02, the court must *Page 9 
determine whether Civ. R. 54(B) language is required and, if so, whether the order contains a certification that "there is no just reason for delay." Where, as here, an order adjudicates fewer than all claims in a case, it must meet the requirements of both R.C. 2505.02 and Civ. R. 54(B) to be final and appealable. Noble, syllabus.
 {¶ 18} In Wisintainer v. Elcen Power Strut Co., 67 Ohio St.3d 352,1993-Ohio-120, the Supreme Court of Ohio stated that, in determining whether an appeal certified under Civ. R. 54(B) is a final appealable order, an appellate court should first focus on whether the order is final under R.C. 2505.02. To constitute a final order, the order must fit into at least one of the categories set forth in R.C. 2505.02(B).Noble at 96. In pertinent part, R.C. 2505.02(B) defines a final order as: "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment; [or] (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment[.]"
 {¶ 19} We focus on R.C. 2505.02(B)(2), which states that an order in a special proceeding that affects a substantial right is a final order. A special proceeding is an "action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2). A declaratory judgment action is a special proceeding under R.C. 2505.02. Gen. Acc. Ins. Co. at 22. A substantial right is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). It involves the notion of a legal right that will be enforced and protected by law. Noble at 94, citing North v. Smith (1906), 73 Ohio St. 247, 249. The *Page 10 
parties' rights to enforcement and performance of the purchase contract involved substantial rights.
 {¶ 20} Ohio courts have recognized that declaratory judgment rulings setting forth the rights of parties constitute final appealable orders.Layman v. Welch, Jefferson App. No. 05-JE-3, 2006-Ohio-1157, ¶ 10, citing Gen. Acc. Ins. Co., paragraph two of the syllabus, andBautista v. Kolis, 142 Ohio App.3d 169, 173, 2001-Ohio-3159; Young v.Cincinnati Ins. Co., Cuyahoga App. No. 82395, 2003-Ohio-4196, ¶ 12 ("rulings made upon declaratory judgment motions which assign rights and obligations of parties are final orders under R.C. 2505.02");Griewahn v. United States Fid. Guar. Co., 160 Ohio App.3d 311, 314,2005-Ohio-1660, ¶ 8. The trial court's November 7, 2007 decision and entry declared the rights of the parties vis- à -vis the purchase contract by determining that the purchase contract was invalid and unenforceable and, accordingly, affected the parties' substantial rights. Additionally, R.C. 2721.02(A), which provides that "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed," specifically concludes that such a "declaration has the effect of a final judgment or decree." Therefore, we find that the trial court's November 7, 2007 decision and entry constitutes a final order pursuant to R.C. 2505.02(B)(2).
 {¶ 21} Next, because the trial court has not adjudicated Niehaus' request for attorney fees, we must determine whether the trial court's entry also complied with the requirements of Civ. R. 54(B), which provides, in part, as follows:
 * * * In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or *Page 11 
parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
Civ. R. 54(B)'s general purpose is to accommodate the strong policy against piecemeal litigation with the possible injustice of delayed appeals in special situations. Noble at 96. Although it cannot affect the finality of an order, Civ. R. 54(B) permits the separation of claims for purposes of appeal and the early appeal of such claims, within the trial court's discretion. Young at ¶ 10, citing Alexander v. BuckeyePipe Line Co. (1977), 49 Ohio St.2d 158.
 {¶ 22} Although this court recently stated that "[a] judgment deferring final adjudication of a request for attorney fees is not a final appealable order" in Wright v. Wright, Franklin App. No. 07AP-595,2008-Ohio-544, ¶ 8, we noted that the judgment entry in that case did not contain a Civ. R. 54(B) certification. In Internatl. Bhd. ofElectrical Workers, Loc. Union No. 8 v. Vaughn Industries, L.L.C.,116 Ohio St.3d 335, 2007-Ohio-6439, the Supreme Court of Ohio implicitly recognized that an order that disposes of some claims, but does not dispose of an attorney fee claim, may be a final appealable order if it contains Civ. R. 54(B) language. At paragraph two of the syllabus, the Supreme Court held: "When attorney fees are requested in the original pleadings, an order that does not dispose of the attorney-fee claimand does not include, pursuant to Civ. R. 54(B), an express determinationthat there is no just reason for delay, is not a final, appealable order." (Emphasis added.) Unlike those cases, the trial court here made an express determination, pursuant to Civ. R. 54(B), that there is no just reason for delay. *Page 12 
 {¶ 23} Niehaus' potential recovery of attorney fees is entirely dependent upon the validity of the trial court's conclusions regarding the enforceability of the purchase contract. A reversal of the trial court's determination regarding the enforceability of the purchase contract would eradicate Niehaus' basis for arguing entitlement to attorney fees. Accordingly, we find that it would be unjust to require the parties to litigate Niehaus' entitlement to attorney fees and the amount of those fees prior to finality on the merits of the competing declaratory judgment claims. Consequently, we conclude that the trial court did not err in including a Civ. R. 54(B) certification in its decision and entry.
 {¶ 24} Because we find that the trial court's November 7, 2007 decision and entry meets the requirements of both R.C. 2505.02(B)(2) and Civ. R. 54(B), we conclude that it was a final appealable order and that this court has jurisdiction to decide Reiner's appeal. Therefore, we deny Niehaus' motion to dismiss, and we proceed to the merits of the appeal.
 {¶ 25} Reiner asserts three assignments of error regarding the trial court's entry of summary judgment:
 ASSIGNMENT OF ERROR NO. 1
 The Common Pleas Court erred to the prejudice of Defendant-Appellant Walter Reiner, in granting summary judgment in favor of Plaintiff Werner Niehaus and Defendant the Columbus Maennerchor.
 ASSIGNMENT OF ERROR NO. 2
 The Common Pleas Court erred to the prejudice of Defendant-Appellant Walter Reiner, in granting summary judgment in favor of Plaintiff Werner Niehaus. *Page 13 
 ASSIGNMENT OF ERROR NO. 3
 The Common Pleas Court erred to the prejudice of Defendant-Appellant Walter Reiner, in granting summary judgment in favor of Defendant The Columbus Maennerchor.
 {¶ 26} We review a summary judgment de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. Coventry Twp.v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 27} Pursuant to Civ. R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. *Page 14 
 {¶ 28} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 292,1996-Ohio-107. Once the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, quotingNorris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 29} For ease of discussion, we address Reiner's assignments of error out of order, beginning with his third assignment of error, which concerns the trial court's grant of the Maennerchor's motion for summary judgment on Reiner's cross-claims. Reiner argues that the trial court erred in granting the Maennerchor's motion for summary judgment because the Maennerchor failed to satisfy its initial burden under Civ. R. 56.
 {¶ 30} "`The requirement that a party seeking summary judgment disclose the basis for the motion and support the motion with evidence is well founded in Ohio law.'" Vahila v. Hall, 77 Ohio St.3d 421, 429,1997-Ohio-259, quoting Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115. The party moving for summary judgment bears the initial responsibility of informing the trial court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine issue of fact on the essential element(s) of the non-moving party's claims. Dresher at 292. Bare allegations by the moving party are insufficient to satisfy the party's initial *Page 15 
burden. Vahila at 430. Rather, the moving party must specifically point to evidence of the types listed in Civ. R. 56(C) that affirmatively demonstrates that the non-moving party has no evidence to support its claims. Dresher at 293. The evidence upon which the moving party relies must be in the record, or the motion cannot succeed. Frederic v.Willoughby, Portage App. No. 2007-P-0084, 2008-Ohio-3259, ¶ 21, citingDresher at 293. If the moving party fails to sustain its initial burden, the court must deny the motion for summary judgment. Id.
 {¶ 31} In its motion for summary judgment, the Maennerchor relied on the August 9, 2007 magistrate's decision denying Reiner's motion for a preliminary injunction. The Maennerchor argued that the magistrate made predicate findings of fact, including a finding that Reiner breached his fiduciary duty to the Maennerchor, sufficient to render Reiner's claim of an enforceable purchase contract moot.
 {¶ 32} Reiner argues that, in relying exclusively on the magistrate's findings of fact in support of its motion for summary judgment, the Maennerchor failed to identify any evidence in the record in support of its motion and thus failed to satisfy its initial burden. We agree. In its November 7, 2007 decision and entry, the trial court noted that a magistrate's decision is not proper summary judgment evidence under Civ. R. 56 and, further, stated that it had not adopted the magistrate's decision, which was predicated on Reiner's withdrawn motion for a preliminary injunction. Accordingly, the trial court ordered stricken any reference to the magistrate's factual findings in the parties' motions for summary judgment and related memoranda and specifically stated that it would not consider the magistrate's factual findings in ruling on the parties' motions. Thus, references to the magistrate's findings of fact are insufficient to meet the *Page 16 
Maennerchor's initial burden of pointing to proper Civ. R. 56(C) evidence in the record to demonstrate an absence of genuine issues of fact.
 {¶ 33} In response to Reiner's third assignment of error, the Maennerchor argues that the trial court did not rely on the magistrate's findings of fact but, instead, properly relied on evidence presented to the magistrate in the four-day preliminary injunction hearing. However, the Maennerchor's response does not address Reiner's argument by explaining how it met its initial burden on summary judgment. The mere existence of evidence in the record to support the Maennerchor's position is insufficient to justify the trial court's entry of summary judgment if the Maennerchor did not satisfy its initial burden. Unless and until the Maennerchor, as a party moving for summary judgment, satisfied its initial burden, summary judgment in favor of the Maennerchor was unwarranted and inappropriate. Pennsylvania LumbermensIns. Corp. v. Landmark Elec., Inc. (1996), 110 Ohio App.3d 732, 742
("unless a movant meets its initial burden * * *, a trial court shall not grant a summary judgment"). In its motion for summary judgment, the Maennerchor does not point to any specific evidence, either in the form of depositions, affidavits or other proper Civ. R. 56(C) evidence, or in the form of testimony before the magistrate, to meet its initial burden. Instead, the Maennerchor relied exclusively on the magistrate's findings of fact, including the finding that Reiner breached a fiduciary duty to the Maennerchor. Therefore, we find that the Maennerchor did not satisfy its initial burden on summary judgment.
 {¶ 34} Although the Maennerchor also argues, based on the magistrate's decision, that the doctrine of the law of the case applies to all factual determinations in this case other than Niehaus' entitlement to attorney fees, we reject that argument. The *Page 17 
law of the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3. The doctrine precludes a litigant from relying on arguments at retrial that were fully litigated or could have been fully litigated in a first appeal. State ex rel. Dannaher v. Crawford, 78 Ohio St.3d 391, 394,1997-Ohio-72, citing Hubbard ex rel. Creed v. Sauline,74 Ohio St.3d 402, 404-405, 1996-Ohio-174. Here, not only has there has been no decision by a reviewing court, but the trial court expressly declined to adopt the magistrate's decision. Therefore, we find the law of the case doctrine inapposite to this matter. See Dannaher at 394 (rejecting application of the law of the case where the plaintiff did not contend that the trial judge failed to comply with the mandate of a reviewing court).
 {¶ 35} Because we find that the Maennerchor failed to satisfy its initial burden under Civ. R. 56 by identifying evidence in the record demonstrating an absence of a genuine issue of material fact on the essential elements of Reiner's cross-claims, we conclude that the trial court erred in granting the Maennerchor's motion for summary judgment, and we sustain Reiner's third assignment of error.
 {¶ 36} Next, we consider Reiner's second assignment of error, by which Reiner argues that the trial court erred in granting Niehaus' motion for summary judgment. Specifically, Reiner contends that Niehaus was not entitled to summary judgment on his derivative claim for a declaratory judgment regarding the enforceability of the purchase contract because he failed to establish that he was entitled to bring a shareholders' derivative action. *Page 18 
 {¶ 37} Civ. R. 23.1 establishes mandatory requirements for maintaining a shareholder's derivative action, and states, in pertinent part, as follows:
 In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains * * *. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from the shareholders and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders similarly situated in enforcing the right of the corporation. * * *
These procedural requirements also apply to a member of a non-profit corporation who brings a derivative action. Carlson v. Rabkin,152 Ohio App.3d 672, 2003-Ohio-2071; Sayyah v. O'Farrell (Apr. 30, 2001), Brown App. No. CA2000-06-017. Thus, complaining shareholders must "(1) spell out the efforts made to have directors or the other shareholders take the action demanded, (2) explain why they failed in this effort or did not make it, and (3) show that they `fairly and adequately' represent the interests of other shareholders `similarly situated.'" Weston v.Weston Paper Mfg. Co., 74 Ohio St.3d 377, 379, 1996-Ohio-148, quoting Civ. R. 23.1.
 {¶ 38} Niehaus' verified complaint contains allegations of each of the requirements set forth in Civ. R. 23.1. Niehaus alleged that, at the time of the transactions complained of, he was a member of the Maennerchor. With respect to efforts to obtain the action he desired, Niehaus alleged that his counsel:
 * * * [M]ade multiple efforts to internally resolve, without court intervention, the violations of statutory corporation law and the *Page 19 
[Maennerchor] Constitution. Without limitation, these efforts included detailed written correspondence dated January 12, 2007 to Michael Becker, attorney representing the forming members of the proposed LLC, and detailed written correspondence dated January 17, 2007 to Hinterschied, president of the board. Attorney Becker advised that his client would not provide assurances that the proposed LLC would not attempt to proceed with the sale, despite the advice of its own legal counsel, Melliere, to the contrary. Hinterschied did not respond to a demand that he provide assurances that a closing on the Reiner Purchase Contract would not occur. * * *
(Complaint ¶ 20.) Lastly, Niehaus alleged that he fairly and adequately represents the interests of similarly situated Maennerchor members.
 {¶ 39} In their answers to Niehaus' complaint, both Reiner and the Maennerchor raised affirmative defenses based on Niehaus' alleged failure to comply with the requirements of Civ. R. 23.1, but neither Reiner nor the Maennerchor moved the court to dismiss the complaint for failure to state a claim or moved for summary judgment on the basis of Niehaus' standing to maintain a derivative action. Niehaus, however, moved for summary judgment on each of his derivative shareholder claims and as to his entitlement to attorney fees. In his motion for summary judgment against Reiner, Niehaus argued that he prevailed as a matter of law on his shareholders' derivative action and was entitled to a hearing on attorney fees. In their memoranda contra, neither Reiner nor the Maennerchor argued that Niehaus was not entitled to maintain a derivative action based on a failure to comply with Civ. R. 23.1. To the contrary, they argued only that Niehaus was not entitled to recover attorney fees on his derivative action, either because he could not prevail on the merits against the Maennerchor or because his derivative action bestowed no benefit upon the Maennerchor. *Page 20 
 {¶ 40} On appeal, Reiner argues that the trial court did not address whether Niehaus satisfied the mandatory requirements of Civ. R. 23.1.[1] Accordingly, Reiner contends that this court must reverse the summary judgment in favor of Niehaus and remand the matter for consideration of that issue. On the other hand, Niehaus argues that the pleadings and the evidence before the trial court establish compliance with Civ. R. 23.1 and his right to maintain a shareholders' derivative action.
 {¶ 41} While we acknowledge that the record contains no express indication that the trial court decided Niehaus' entitlement to maintain a shareholders' derivative action under Civ. R. 23.1, the trial court granted summary judgment in favor of Niehaus on his derivative claims. Moreover, the trial court referred the matter for a hearing on Niehaus' request for attorney fees, entitlement to which depended solely on Niehaus' maintenance of a shareholders' derivative action. From such actions, we must presume that the trial court determined that Niehaus was entitled to maintain this action as a shareholders' derivative action. Regardless, however, review of Niehaus' complaint and the evidence before the trial court demonstrates that Niehaus satisfied the requirements of Civ. R. 23.1 and was entitled to initiate and maintain a derivative action.
 {¶ 42} First, it is undisputed that Niehaus' complaint was verified and that Niehaus was a member of the Maennerchor at all relevant times. Second, the complaint alleged that Niehaus fairly and adequately represented the interests of similarly situated Maennerchor members. Defendants presented no evidence on the issue of fair and adequate representation; therefore, for purposes of summary *Page 21 
judgment, the trial court was required to accept the allegations as true. See Carlin v. Brownfield (June 18, 1985), Franklin App. No. 84AP-345. Finally, in paragraph 20 of his complaint, Niehaus alleged that he demanded, to no avail, an assurance from Hinterschied that the Maennerchor would not proceed with closing on the purchase contract and demanded assurances from counsel for the forming LLC, comprised of directors and/or members of the Maennerchor, that the LLC would not proceed with the sale. Niehaus attached to his complaint the affidavit of his counsel, Sebastian E. Proels, detailing the efforts made to obtain assurances that the sale contemplated by the purchase contract would not proceed. Exhibits to Proels' affidavit include copies of the letters described in paragraph 20 of Niehaus' complaint. The record also includes minutes of the January 6, 2007 board meeting, at which Niehaus argued that the board vote to ratify Hinterschied's signature on the purchase contract was fraudulent. Thus, based on the pleadings and record evidence, we find that Niehaus satisfied the requirements of Civ. R. 23.1 to maintain a shareholders' derivative action.
 {¶ 43} Although the Maennerchor eventually changed its position and joined Niehaus' efforts to have the purchase contract declared invalid and unenforceable, the Maennerchor initially denied the substantive allegations of Niehaus' complaint, opposed Niehaus' motion for a preliminary injunction, and prayed for dismissal of Niehaus' complaint. While the Maennerchor's shift in position may be relevant to Niehaus' entitlement to attorney fees, inasmuch as it relates to whether Niehaus' actions conferred a benefit on the Maennerchor, see Mlinarcik v. E.E.Wehrung Parking, Inc. (1993), 86 Ohio App.3d 134, 146, it does not negate Niehaus' satisfaction of the *Page 22 
Civ. R. 23.1 requirements. Because we conclude that Niehaus satisfied the requirements of Civ. R. 23.1, we overrule Reiner's second assignment of error.
 {¶ 44} Having overruled Reiner's second assignment of error, we must, finally, address Reiner's first assignment of error as it relates to the trial court's ruling on Niehaus' motion for summary judgment. In his first assignment of error, Reiner argues that issues of fact regarding notice of the December 12, 2006 meeting and vote on the purchase contract precluded summary judgment regarding the validity and enforceability of the purchase contract.
 {¶ 45} In granting Niehaus' motion for summary judgment, the trial court stated, as follows:
 Pursuant to Section 9.6 of the Maennerchor's Constitution and R.C. 1702.39(A)(1), supra, and prior to the December 12, 2006 membership meeting, the Maennerchor was required to give its members notice that a membership meeting would be held to discuss the Reiner Purchase Contract, and the Maennerchor was required to provide its members with a copy of the Reiner Purchase Contract, or with a summary of the terms of the Reiner Purchase Contract. It is undisputed that the Maennerchor did not provide such notice to its members.
 Inasmuch as the Reiner Purchase Contract was not authorized by the Maennerchor's membership in accordance with Section 9.6 of the Maennerchor's Constitution and R.C. 1702.39(A)(1), the Reiner Purchase Contract is not valid as a matter of law.
Reiner now argues that, contrary to the trial court's finding, disputed facts remained as to whether the Maennerchor complied with R.C. 1702.39(A)(1) and Section 9.6 of its constitution with respect to the December 12, 2006 meeting and vote. *Page 23 
 {¶ 46} R.C. 1702.39(A)(1), which governs the sale or disposition of assets by Ohio non-profit corporations, provides, in pertinent part, as follows:
 Unless the articles or the regulations * * * otherwise provide, a * * * sale * * * of any assets of a mutual benefit corporation may be made without the necessity of procuring authorization from the court under section 1715.39 of the Revised Code, upon the terms and for the consideration * * * that may be authorized by the directors, except that a * * * sale * * * of all, or substantially all, the assets may be made only when that transaction is also authorized (either before or after authorization by the directors) by the voting members present in person or, if permitted, by mail, by proxy, or by the use of authorized communications equipment, at a meeting held for that purpose, by the affirmative vote of a majority of the voting members present as described in this division, if a quorum is present, or, if the articles or the regulations provide or permit, by the affirmative vote of a greater or lesser proportion or number of the voting members, and by the affirmative vote of the voting members of any particular class that is required by the articles or the regulations. Notice of the meeting of the members shall be given to all members entitled to vote at the meeting. Such notice shall be accompanied by a copy or summary of the terms of that transaction.
Thus, unless altered by a corporation's articles or regulations, R.C. 1702.39(A)(1) requires that a sale of all, or substantially all, of the corporation's assets be authorized by the voting members at a meeting held for that purpose. The statute further requires that notice of the meeting, accompanied by a copy or summary of the terms of the proposed transaction, be given to all members entitled to vote.
 {¶ 47} The Maennerchor constitution similarly requires member approval for certain substantial contracts. Section 9.6 of the Maennerchor constitution provides, in pertinent part, as follows:
 * * * A specific authorization of the Members of the Corporation shall be required before any contract, purchase, *Page 24 
or other financial commitment on behalf of The Columbus Maennerchor in excess of twenty-five thousand dollars ($25,000.00) may be made. * * *
Section 9.6 of the Maennerchor constitution complements R.C. 1702.39(A)(1); it does not alter the requirements of that section.
 {¶ 48} The purchase contract constitutes both a sale of all, or substantially all, of the corporation's assets and a contract in excess of $25,000. Accordingly, under both R.C. 1702.39(A)(1) and Section 9.6 of the Maennerchor constitution, members' authorization of the purchase contract was required. While not arguing that R.C. 1702.39(A)(1) is inapplicable, Reiner argues that whether adequate notice of the December 12, 2006 meeting and vote was given to the Maennerchor members must be considered a disputed question of fact upon which summary judgment should not have been granted. Specifically, Reiner argues that questions of fact remain because neither R.C. 1702.39(A)(1) nor the Maennerchor constitution defines notice and because R.C. 1702.39(A)(1) does not define what must be included in a summary of the terms of a transaction. Reiner further argues that evidence of Mrs. Reiner's flyer raises a genuine issue of fact as to whether the Maennerchor complied with the notice requirements.
 {¶ 49} Although Reiner attempts to create ambiguity in the statutory requirements for notice, we find none. Pursuant to R.C. 1702.39(A)(1), all members entitled to vote on the purchase contract were entitled to notice of a meeting held for that purpose, along with a copy or summary of the terms of the transaction upon which they were to vote. With respect to notice of meetings, R.C. 1702.18 states that, unless the corporate articles or regulations provide otherwise, written notice stating the time and place of a meeting of the voting members and, "in case of a special meeting, the purpose or *Page 25 
purposes for which the meeting is called, shall be given * * * (A) to each member entitled to notice of the meeting; (B) by or at the direction of the president or the secretary or any other person required or permitted by the regulations to give notice." Reading those statutes in pari materia, Maennerchor members were, at a minimum, entitled to written notice of the December 12, 2006 meeting and vote and a copy or summary of the purchase contract terms.
 {¶ 50} The Maennerchor constitution contains its own requirements for notice of meetings. Section 8.5 requires that, unless waived in writing, the president or membership secretary deliver or mail written notice of special meetings of the members, stating the time, place, and purposes thereof. Section 8.4 provides that notice of regular meetings is not required, absent a change in the customary time and place of the meeting. Nothing in the Maennerchor constitution alters the R.C. 1702.39(A)(1) requirements that a members' vote on a sale of all or substantially all of the corporation's assets be conducted at a meeting held for that purpose or that all members receive notice of the meeting accompanied by a copy or summary of the terms of the transaction.
 {¶ 51} Here, the members' vote on the purchase contract was held, not at a special meeting held for that purpose, but at the December 12, 2006 regular meeting of the Maennerchor membership. Even were we to conclude that the membership vote could properly be held at a regular meeting, the members were entitled to notice of the vote and a copy or summary of the terms of the proposed sale transaction. While the first sentence of R.C. 1702.39(A)(1) provides that the requirement of members' approval may be altered by the corporate articles or regulations, that caveat is not repeated with *Page 26 
respect to subsequent sentences of that section, requiring notice of such a vote, accompanied by a copy or summary of the terms of the transaction. Moreover, nothing in the Maennerchor constitution, including the statement that notice of regular meetings need not be given, alters the requirement that members be provided a copy or summary of the terms of a transaction involving the sale of all or substantially all of the corporation's assets.
 {¶ 52} According to Reiner, on December 11, 2006, the board decided to put the purchase contract to a vote of the members at the regular meeting scheduled for the following night. It is undisputed that, after the board decided to hold a membership vote on the purchase contract, no notice was sent to Maennerchor members regarding the vote or the terms of the purchase contract. In his deposition, Hinterschied expressly testified that no written notice of the December 12, 2006 meeting was sent to any members of the Maennerchor. Hinterschied further testified that he was unaware of any written notice given to Maennerchor members that contained the terms of or summarized the purchase contract.[2]
Although Reiner contends that the board did not deem it necessary to send special notice or a summary of the terms of the purchase contract in advance of the meeting, neither the board's belief as to whether special notice was required nor the board's past practices overrides the statutory requirements *Page 27 
set forth in R.C. Chapter 1702 where those requirements are unaltered by the Maennerchor's articles and regulations, as embodied in the Maennerchor constitution.
 {¶ 53} Reiner contends that the record contains sufficient evidence to create a question for the trier of fact as to whether the Maennerchor provided its members with sufficient notice of the December 12, 2006 meeting and vote on the purchase contract to satisfy the requirements of R.C. 1702.39(A)(1). While Reiner may be correct that whether notice is sufficient or adequate may, in some instances, be a question of fact, there is simply no evidence here to create a dispute on that question. The only possible source of notice to the members comes from the flyer that Mrs. Reiner authored and mailed on or about December 7, 2006. However, Mrs. Reiner herself testified that she was not aware of any notice for the December 12, 2006 meeting being given prior to that meeting. With respect to the flyer, Mrs. Reiner stated: "I don't know that I consider that a notice necessarily. It was information." (Mrs. Reiner Depo. 39.) Mrs. Reiner further testified that the flyer did "not directly" have anything to do with the purchase contract, but merely the proposal discussed by lender-members to form an LLC to purchase the Maennerchor and continue its traditions. (Mrs. Reiner Depo. 44.) Despite its discussion of a Survival Plan, the flyer does not identify a purchase contract, set forth a purchase price or set forth any specific contract terms regarding the described LLC's purchase of the Maennerchor property. Neither does the flyer inform members that a vote on a specific purchase contract would be conducted at the December 12, 2006 meeting. Although Mrs. Reiner testified that Hinterschied told her it was a good idea to inform the members about what was going on with the Maennerchor, she admits that there was never any official corporate approval or authorization for her flyer. Mrs. *Page 28 
Reiner paid for postage to mail the flyer and did not think she was acting in the capacity of the Maennerchor.
 {¶ 54} Upon review, we reject Reiner's suggestion that Mrs. Reiner's flyer creates an issue of fact as to whether the Maennerchor issued notice of the vote on the purchase contract to be conducted at the December 12, 2006 membership meeting. The flyer did not include a copy of the purchase contract, the applicable version of which was not presented to the board until after Mrs. Reiner mailed her flyer. Nor did the flyer, despite its description of a Survival Plan, set forth any specific contract terms, including price. Finally, and perhaps most importantly, the flyer did not inform members that a vote to approve a purchase contract would be conducted at the December 12, 2006 meeting. Even were we to agree with Reiner that the absence of a definition of "summary" in R.C. 1702.39(A)(1) creates an ambiguity in the statute as to what is required to constitute a summary of terms, the absence of any notice that a specific purchase contract was to be voted on is fatal to any finding of compliance with R.C. 1702.39(A)(1). Accordingly, we find no error in the trial court's conclusion that the Maennerchor did not provide notice to its members.
 {¶ 55} In his reply brief on appeal, Reiner suggests that Niehaus waived any objection to the failure of notice regarding the December 12, 2006 meeting and vote, pursuant to R.C. 1702.19(B), which provides as follows:
 If a member or director attends a meeting described in division (A) of this section without protesting prior to or at the commencement of the meeting, then the lack of proper notice shall be deemed to be a waiver by the member or director of notice of the meeting. *Page 29 
Reiner did not raise any argument regarding R.C. 1702.19(B) in either his motion for summary judgment or in opposition to Niehaus' or the Maennerchor's motions for summary judgment in the trial court. Consequently, the trial court did not address or rule upon that issue. It is well-settled that a party may not raise an issue on appeal that was not initially raised before the trial court. Ohio Farmers Ins. Co.v. Estate of Brace (1997), 116 Ohio App.3d 395, 401, citing Niemann v.Cooley (1994), 93 Ohio App.3d 81, 89; Porter Drywall, Inc. v. OlentangyBldg. Dev. Co. (Feb. 24, 2000), Franklin App. No. 99AP-306, citingStevens Skin Softener, Inc. v. Revco Drug Stores, Inc. (1997),121 Ohio App.3d 212, 218. "`A party may not assert a new legal theory for the first time before an appellate court.'" Ohio Farmers Ins. Co. at 401, quoting AMF, Inc. v. Mravec (1981), 2 Ohio App.3d 29, 32. As this issue was not properly raised in the trial court, we decline to consider it for the first time on appeal.
 {¶ 56} Upon review, we find that the trial court correctly concluded, based on a failure of notice, that the purchase contract was not authorized by the Maennerchor membership in accordance with R.C. 1702.39(A)(1) and Section 9.6 of the Maennerchor constitution and was, therefore, invalid as a matter of law. Accordingly, we overrule Reiner's first assignment of error.
 {¶ 57} For the foregoing reasons, we overrule the first and second assignments of error, thus affirming the trial court's grant of summary judgment on behalf of Niehaus. We sustain the third assignment of error, thus reversing the trial court's judgment against Reiner's cross-claim, by which Reiner had argued that the contract was valid. Ordinarily, reversal of summary judgment would necessitate a remand to the trial court for further proceedings. Here, however, because we have affirmed the trial court's *Page 30 
judgment that the contract was not valid, further proceedings on Reiner's cross-claims are unnecessary. Nevertheless, we remand this matter to the trial court for appropriate proceedings on Niehaus' request for attorney fees.
Motion to dismiss denied. Judgment affirmed in part, reversed in part,and cause remanded with instructions.
BRYANT and KLATT, JJ., concur.
[1] Reiner also argues that Niehaus could not establish that the Maennerchor failed to take the demanded action because the Maennerchor eventually rejected the purchase contract and pursued the same relief as Niehaus.
[2] Subsequent to his deposition, Hinterschied executed an affidavit in which he states that he authorized Mrs. Reiner's flyer as a notice to all members, notifying them that a contract for the sale of the Maennerchor's assets would be voted on at the December 12, 2006 meeting and notifying them of the terms of the contract. Hinterschied's affidavit is inconsistent with his prior deposition testimony that he was unaware of any notice containing the terms or a summary of the purchase contract. See Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 28
("an affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment"). More importantly, though, even were we to accept that Hinterschied authorized Mrs. Reiner's flyer, the flyer simply did not notify recipients that a specific contract was to be voted upon at the December 12, 2006 meeting. *Page 1