OPINION
{¶ 1} Defendants-appellants, Ward P. Buster and Teresa Buster, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment to plaintiff-appellee, The Mildred Hine Trust. Because defendants submitted no evidence creating a genuine issue of fact regarding the fair market value of the property subject of the real estate contract between plaintiff and defendants, we affirm.
 {¶ 2} According to the evidence submitted in connection with plaintiff's summary judgment motion, plaintiff sought to sell a residence ("the property") located at 2730 *Page 2 
Crafton Park, in Upper Arlington, Ohio. To market the property, plaintiff placed a sign in the front yard and purchased print advertisement in one newspaper, The Columbus Dispatch. In addition to describing the house and detailing the bidding process, the advertisement also informed prospective buyers that plaintiff expected to accept an offer by March 31, 2005. As additional marketing, plaintiff held two open houses at which prospective buyers could view the property. At no time did plaintiff employ a real estate agent to market the property or seek out prospective purchasers.
 {¶ 3} Defendant Teresa Buster, who was nine months pregnant, happened to be driving in the cul-de-sac on which the property is located. The house piqued her interest, and she and her husband, defendant Ward P. Buster, placed a bid of $516,000 for the property on March 28, 2005; the cover letter to defendants' offer included information similar to the text of the newspaper advertisement for the house. Defendants reiterated their interest in the house via fax on March 31, 2005, noting their plans to move in "[i]f we are fortunate enough to have our bid accepted." Plaintiff received other bids on the property, ranging from $425,000 to $452,000. Because defendants' bid was by far the highest, plaintiff accepted it.
 {¶ 4} Defendants' interest in the house shifted after Teresa Buster gave birth on March 28, 2005. Defendants experienced complications with the birth, and the baby's health deteriorated after the baby was released from the hospital. On Sunday, April 3, 2005, defendants left a telephone message for plaintiff's representative to notify her they wished to rescind the contract; the same information was repeated via a fax sent on April 4, 2005. *Page 3 
 {¶ 5} After receiving defendants' notice of rescission, plaintiff offered the house for sale a second time. As before, a real estate agent was not employed. Apart from an advertisement in two newspapers, not just one, plaintiff relied on the same marketing efforts that produced the first bid: soliciting bids and holding two open houses.
 {¶ 6} In terms of attracting bids, the second sale was more successful. The first attempt at selling the house drew only three bids, one of which was withdrawn several hours after it was made and before the March 31 deadline. In contrast, six bids were proffered in response to the second set of advertisements, ranging from $421,500, below the requested minimum of $430,000, to $472,000. Plaintiff accepted the highest bid and filed a complaint against defendants on December 6, 2005 to recover the difference between their bid and the resale price.
 {¶ 7} On November 14, 2006, plaintiff filed a motion for partial summary judgment (1) requesting that the court find defendants breached their contract with plaintiff when they rescinded their bid, and (2) seeking recovery of the difference between the contract and resale price, plus consequential damages sustained as a result of the breach. Defendants filed a response to plaintiff's motion and a cross-motion for summary judgment.
 {¶ 8} In resolving the cross-motions, the trial court determined the parties entered into an enforceable contract that defendants breached. The trial court further concluded the resale price was an adequate measure of the fair market value of the property, as the resale took place within one month of defendants' breach and was conducted in the same manner as the previous sale. Finally, the trial court determined plaintiff fulfilled its duty to *Page 4 
mitigate damages in using the same marketing procedures for both sales. Subsequent to the trial court's decision, plaintiff abandoned its request for consequential damages. Accordingly, the trial court entered final judgment for plaintiff in the amount of $44,000, reflecting the difference between the contract price and the actual resale price.
 {¶ 9} Defendants appeal, assigning two errors:
 1. THE TRIAL COURT ERRED IN HOLDING THAT THE RESALE PRICE OF THE PROPERTY IN QUESTION WAS THE BEST AND ONLY NECESSARY MEANS BY WHICH THE FAIR MARKET VALUE OF THE PROPERTY COULD BE OBTAINED.
 2. THE TRIAL COURT ERRED IN HOLDING THAT APPELLEE SUFFICIENTLY MITIGATED HER DAMAGES.
 {¶ 10} An appellate court's review of summary judgment is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,711. We apply the same standard as the trial court and conduct an independent review without deference to the trial court's determination.Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107;Brown, at 711. We must affirm the trial court's judgment if any of the grounds the movant raised before the trial court support the judgment.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 11} Summary judgment is appropriate only when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66. A *Page 5 
party seeking summary judgment "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,292.
I. First Assignment of Error {¶ 12} In their first assignment of error, defendants contend the trial court erred in holding that the resale price equaled the fair market value of the property. Relying on Loft v. Sibcy-ClineRealtors (Dec. 13, 1989), Hamilton App. No. C-880446, defendants argue that the trial court should have taken into account other relevant factors besides the resale price, and in particular, plaintiff's limited marketing efforts. To support their contentions, defendants filed in the trial court an appraisal of the property that placed the property's fair market value at $560,000, suggesting plaintiff could have sold the property at a higher price and eliminated defendants' damages.
 {¶ 13} In determining damages for breach of a real estate contract, Ohio courts generally state "the proper measure of damages for a buyer's breach of a contract for the sale of real property is the difference between the original contract price and the fair market value of the property at the time of the breach." Peterman v. Dimoski, Hamilton App. No. C-020116, 2002-Ohio-7337, citing E.K. Investments v. Kleckner (Nov. 27, 1991), Hamilton App. No. C-900364; Williams v. Kondziela, Lake App. No. 2002-L-190, 2004-Ohio-2077. Applying the general rule, Ohio courts hold that to prevail on a claim for breach of contract for the sale of a house, "a party seeking to recover damages must not only present evidence of the resale price, but must also present sufficient evidence that *Page 6 
the resale price was the true indicator of the fair market value at the time of the breach." Id. at ¶ 20, citing Loft, supra.
 {¶ 14} Employing those guidelines, Ohio courts hold that a trial court generally errs "merely to award the difference between the original contract price and the resale price upon the assumption that the resale price constitutes the fair market value of the home." Id. Because a number of factors affect whether the resale price represents the fair market value, "[t]he court must look to the length of time between the breach and resale, the terms of the original contract and the resale, and any evidence as to the stability of the real estate market during the months between the breach and resale, along with any other relevant factors, to determine if the resale price is sufficient evidence of the fair market value of the property on the date of the breach."Loft, supra.
 {¶ 15} Unlike the principles applied in cases involving breach of a real estate contract, the usual measure of damages for breach of contract involving a resale is the difference between the contract price and the resale price. See, e.g., R.C. 1302.80. We may question why the same measure of damages does not apply in cases involving breach of a real estate contract where, as here, a resale occurs. See Uniform Land Transactions Act, Section 2-504 (stating that if the buyer materially breaches, the seller may resell the property and recover the amount by which the contract price exceeds the resale price); U.S. RestaurantProperties Operating L.P. v. Motel Enterprises, Inc. (Tex.App. 2003),104 S.W.3d 284 (finding no error in jury instruction stating the measure of damages to be the difference between the value as the parties agreed to it and the value the seller received). Were we to apply general contract law, the trial court's *Page 7 
measure of damages would be accurate and the appraisal irrelevant. Even when, however, we apply the law generally accepted in Ohio for breach of a real estate contract, the trial court properly resolved plaintiff's summary judgment motion.
 {¶ 16} Plaintiff submitted the settlement statement from reselling the property. The resale occurred as a result of competitive bidding held within one month of defendants' breach on terms identical to those plaintiff offered to defendants. As the trial court properly concluded, plaintiff thus fulfilled its summary judgment burden of providing evidence that the resale price was the property's fair market value. SeeRoth v. Habansky, Cuyahoga App. No. 82027, 2003-Ohio-5378 (concluding fair market value reached where, in an arms length agreement between the parties, the seller wants to get the highest price without losing the sale, the buyer wants to get the lowest price without losing the house, and based on these two competing interests they agree to a contract price).
 {¶ 17} In response to plaintiff's summary judgment motion, defendants on December 14, 2006 filed a memorandum contra with a certified appraisal attached. According to the appraisal, the property had a fair market value of $560,000. The appraisal, however, lacked an affidavit to meet the requirements of Civ.R. 56(C). In its reply memorandum, plaintiff objected to the appraisal as lacking the necessary affidavit, prompting defendants to file a January 4, 2007 motion for leave to supplement the appraisal with an attached affidavit from the appraiser. Defendants' memorandum asserted that, due to the holidays, defendants had been unable to secure the necessary affidavit. *Page 8 
 {¶ 18} The trial court did not rule on the motion before determining the summary judgment motion on January 16. When a trial court fails to rule on such a motion, the motion is deemed denied. Bank One, N.A. v.Lytle, Lorain App. No. 04CA008463, 2004-Ohio-6547. Absent the affidavit, defendants created no genuine issue of material fact regarding fair market value of the property. Given the facts before it, the trial court applied Roesch v. Bray (1988), 46 Ohio App.3d 49. Where, in the absence of any contrary evidence, the resale price was determined to be evidence of fair market value. Similarly, here, in the absence of disputed evidence of fair market value, the trial court properly concluded plaintiff is entitled to summary judgment.
 {¶ 19} Because the trial court did not err in determining the resale price was an adequate measure of the fair market value, defendants' first assignment of error is overruled.
II. Second Assignment of Error {¶ 20} In their second assignment of error, defendants contend plaintiff failed to sufficiently mitigate its damages, as plaintiff's resale was not on the open market and occurred too soon after the contract was breached. Generally, an injured party has a duty to mitigate and may not recover for damages that reasonably could have been avoided. Chicago Title Ins. Co. v. Huntington Natl. Bank (1999),87 Ohio St.3d 270, citing S D Mechanical Contrs., Inc. v. Enting WaterConditioning Sys., Inc. (1991), 71 Ohio App.3d 228. The obligation to mitigate, however, does not require a party to incur extraordinary expense and risk. Id. *Page 9 
 {¶ 21} Although defendants assert plaintiff failed to mitigate its damages because resale "was not conducted on the open market," they fail to cite to any authority to support their claim that a sealed bid sale is not an open market sale. Black's Law Dictionary (8 Ed.2004) 989 defines an "open market" as "a market in which any buyer or seller may trade and in which prices and product availability are determined by free competition." Indeed, one Ohio Supreme Court justice commented that "`[o]pen market' seems to have the indicia of advertising, bidding and/or negotiations with the world at large." Walters v. Knox County Bd.of Revision (1989), 47 Ohio St.3d 23, 26 (Douglas, J., concurring).
 {¶ 22} Such requirements of an open market sale were satisfied in this case, as advertisements were placed in two separate newspapers, open houses were conducted, and in response plaintiff received six bids from prospective purchasers. In reality, defendants' contentions resolve to their discontent with plaintiff's failure to hire a realtor to resell the property. Again, however, defendants failed to present any authority, this time to suggest mitigation efforts in real estate sales necessarily include a realtor. Plaintiff actually expended more effort in resale by running advertisements in two newspapers, unlike the single newspaper used in the sale to defendants. Absent legal authority suggesting plaintiff's efforts fell short of mitigation, the trial court did not err in concluding plaintiff fulfilled its obligation to mitigate damages.
 {¶ 23} Defendants also question the speed with which plaintiff sold the property. The resale occurred 27 days after defendants' breach. Defendants claim the "resale and closing of the property, occurring so abruptly, precluded any prospective bidders from displaying interest in the property, and thus this resale did not operate as an effective *Page 10 
mitigation[.]" (Defendants' brief, 9.) Defendants' argument is without merit, as the record indicates the resale generated twice as many bids as the original sale.
 {¶ 24} Accordingly, defendants' second assignment of error is overruled.
 {¶ 25} Having overruled defendants' two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 SADLER, P.J., and McGRATH, J., concur. *Page 1