[Cite as *MacDonald v. Authentic Invests., L.L.C.*, 2016-Ohio-4640.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John Thomas MacDonald, Jr., | : | |
| Plaintiff-Appellant, | : | No. 15AP-801 |
| v. | : | (M.C. No. 2014 CVF 027017) |
| Authentic Investments, LLC et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

## D E C I S I O N

### Rendered on June 28, 2016

**On brief:** *Madison & Rosan, LLP*, *Kristin E. Rosan*, and *Darcy A. Shafer*, for appellant. **Argued:** *Darcy A. Shafer*.

**On brief:** *Plunkett Cooney*, and *David L. Van Slyke*, for appellees. **Argued:** *David L. Van Slyke*.

APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Plaintiff-appellant, John Thomas MacDonald, Jr., appeals from a judgment of the Franklin County Municipal Court, which denied appellant's motion for summary judgment and granted defendants-appellees' motion for summary judgment on appellees' counterclaim and awarded damages to appellees in the amount of $15,000 plus costs and interest. For the following reasons, we affirm in part the trial court's summary judgment decision in favor of appellees and reverse in part and remand the trial court's decision on the award of damages.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On June 22, 2014, appellee Ria Busch signed a listing contract giving real estate agent John Brunicardi the exclusive right to sell a certain residential property in

Grandview Heights, Ohio.  According to the listing contract, appellees agreed to pay the brokerage a fee of 6 percent of the selling price, authorized Brunicardi to compensate a buyer's broker from the fee paid, and did not authorize Brunicardi to compensate other brokers as subagents.  Brunicardi listed the property for a purchase price of $279,900.

{¶ 3}   That morning, appellant e-mailed Brunicardi to request a walk through of the property.  Within the email, appellant stated that he and his fiancée "are not working with an agent," were flexible on a move date, and were "pre-approved."  (June 22, 2014 E-mail at 1.)  Appellant noted that they had been looking in Grandview Heights for several months with no luck and would likely write a contract on the spot after viewing the property.

{¶ 4}   After viewing the property, appellant and Ria Busch signed a purchase contract drafted by appellant using the standard Columbus Relators Association form.  In the purchase contract, appellant agreed to pay $280,000 in exchange for the seller's promise to convey marketable title in fee simple.  The purchase contract incorporates a "Continuation of Terms and Conditions of Offer," also drafted by appellant, which names Authentic Investments, LLC, as the seller and includes, among other items, an escalation clause up to $295,000 in the event of multiple offers and a clause that the offer is "[c]ontingent upon Seller(s) being able to deliver good and marketable title to the property."  (Addendum at 1.)  Appellant and Ria Busch initialed the addendum.

{¶ 5}   The purchase further indicates that appellees' broker received $500 in earnest money from appellant.  Regarding the disposition of the earnest money, Section 10.4, states, in pertinent part, "[i]f any written contingency is not satisfied or waived, or if the Seller fails or refuses to perform or if the Buyer rescinds this contract pursuant to paragraph 9.1(b) [allowing the buyer to rescind the contract where damage or destruction of the property occurs before closing], the earnest money deposit shall be returned to the Buyer.  If the Buyer fails or refuses to perform, the earnest money deposit shall be paid to the Seller."  (Purchase Contract at 7.)  No provision in the purchase contract addresses commissions for real estate agents or brokers.  The purchase contract provides that it "constitutes the entire agreement."  (Purchase Contract at 8.)

{¶ 6} Ria Busch and appellant additionally signed an Agency Disclosure Statement naming Authentic Investments, LLC, as the seller and indicating that

Brunicardi would represent only the seller while "[t]he other party is not represented and agrees to represent his/her own best interest." (Agency Disclosure Statement at 1.) The disclosure statement states that "the purpose of this form is to confirm that you have been advised of the role of the agent(s) in the transaction proposed below." (Agency Disclosure Statement at 1.)

{¶ 7} On July 7, 2014, appellant notified Brunicardi that real estate agent Eric Odita would represent him in the transaction. Both parties appeared on the closing date, August 7, 2014, but a dispute ensued over closing documents which did not allot Odita a 3 percent commission, and appellant ultimately did not sign the closing documents.

{¶ 8} On August 18, 2014, appellant filed in the Franklin County Municipal Court a complaint naming Authentic Investments, LLC, Ria Busch, and Benjamin Busch as defendants. In his complaint, appellant asked the trial court "[t]o establish that the [real estate purchase] contract was breached by [appellees]," to compel appellees to perform on the original purchase contract with appellant and to compensate his real estate agent, to stop the sale of the residential property at issue, and to award damages, attorney fees, court costs, and/or other equitable remedies. (Compl. at 4.)

{¶ 9} On September 2, 2014, appellees filed an answer, a motion for summary judgment, and a motion to strike appellant's amended complaint which attempted to add a co-plaintiff, Allcare Realty, without leave of the court. Appellees sought and received leave to file a counterclaim against appellant for monetary damages for breach of contract, promissory estoppel, and slander of title.

{¶ 10} On September 30, 2014, appellees agreed to sell the property to another buyer for a purchase price of $273,500, a deal in which appellees incurred a 5 percent commission and an alleged $4,100 in closing costs.

{¶ 11} Before the trial court ruled on the pending pleadings and motions, appellant filed a notice of voluntary dismissal of his complaint on October 7, 2014.[1] A few weeks later, appellant replied to appellees' counterclaim. In response to appellees' contention

---

[1] Shortly thereafter, on October 17, 2014, appellees filed a motion for sanctions against appellant for frivolous conduct in bringing the action pursuant to Civ.R. 11 and R.C. 2323.51. The parties agreed to continue the hearing on sanctions until after the decision on summary judgment, and the motion for sanctions remains pending with the trial court. After considering briefs submitted by the parties, we agree that, on these facts, the trial court's decision constitutes a final, appealable order pursuant to Civ.R. 54(B). *See McKibben v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-737, 2015-Ohio-1241, ¶ 19.

that they never agreed to pay commission to Odita, appellant "aver[red] that it was not within the control of Authentic Investments, LLC, or [Ria and Benjamin Busch], to agree to pay an agent's commission for the benefit of [appellant]." (Reply to Countercl. at 2.) Appellant additionally agreed that "the closing would have occurred had [appellees] agreed to pay the reasonable and customary commission due [Odita]." (Reply to Countercl. at 2.) Appellant denied that he breached the contract and asserted defenses pertaining to a failure to mitigate damages, entitlement to set off from the $500 escrow, lack of proximate cause, and a failure to state a claim on which relief can be granted particular to appellees' allegation of malice in bringing the claim.

{¶ 12} On November 7, 2014, appellees filed a motion for summary judgment against appellant on their counterclaim, which included, among other items, an affidavit averring Benjamin and Ria Busch as members of Authentic Investments, LLC. Appellant filed a memorandum contra and cross-motion for summary judgment on November 24, 2014. In this memorandum, appellant states that the property was owned by appellee Authentic Investments, LLC, and describes Ria Busch as an agent of Authentic Investments. The memorandum contra argues that appellant did not breach the purchase contract because of appellees' failure to pay commission based on a "side deal" that was not disclosed, that appellees breached the listing agreement which established a 6 percent commission, and that appellees failed to mitigate damages. (Memo. Contra at 7.)

{¶ 13} The trial court granted appellees and denied appellant's motion for summary judgment on February 17, 2015. The trial court decision states that "[t]he parties do not dispute that they entered into the purchase contract on June 22, 2014" and that "[appellant] agrees there are no genuine issue of material fact remaining but argues [appellees] breached the real estate purchase contract when they failed to pay his broker a portion of the commission fee" as well as arguing about mitigation of damages. (Feb. 17, 2015 Decision at 1, 3.) According to the trial court decision, appellees are entitled to summary judgment because appellant was not a party to the listing agreement indicating payment of 6 percent commission to appellees' agent, the listing agreement was not incorporated into the purchase agreement, and neither the purchase agreement nor the listing agreement were amended to require a promise to pay commission to appellant's agent.

{¶ 14} After noting that appellees agreed to limit recovery on their counterclaim to the court's monetary limit, $15,000, the trial court ordered the parties to file briefs regarding the proper calculation and amount of damages, considering the general rule stated in *Mildred Hine Trust v. Buster*, 10th Dist. No. 07AP-277, 2007-Ohio-6999, that the measure for damages involving a buyer's breach of a real estate purchase contract is the difference between the original contract price and fair market value of the property at the time of the breach.

{¶ 15} An evidentiary hearing on damages was held on July 24, 2015. Brunicardi testified for appellees. According to Brunicardi, due to concerns that a closing would not occur with appellant, he changed the MLS status of the house back to active one week before closing with a price of $295,900 with an escape clause, and then on August 7, 2014, the evening of the failed closing, he set the list price to $289,900. Brunicardi based the listing prices on the fact they previously were able to obtain an offer with an escalation clause up to $295,000, and testified that, at the time, he believed those prices represented a fair market price for the property.

{¶ 16} Brunicardi testified that between August 7 and 28, 2014, the property had 24 showings, but only 1 offer was submitted. Because of the lack of interest at that later point in the selling season, costs associated with the property, and appellees' relocation to Denver, Colorado, Brunicardi recommended that appellees agree to sell the property for $273,500 with an overall credit to the buyer of $4,100 comprised of $2,500 in closing costs and $1,600 in request for remedy items, and 5 percent commission with the buyer's realtor receiving 3 percent out of that commission. Brunicardi did not believe the lawsuit or a vandalism incident affected the value of the home. The house closed with the above terms on September 30, 2015.

{¶ 17} For appellant, Odita testified that, in his opinion, the fair market value of the property was approximately $280,000. Appellant testified on his own behalf that he prepared both the purchase contract and continuation addendum. Appellees testified that after appellant refused to close, he nonetheless wanted to go through with the contract and purchase the house and attempted further discussions with appellees.

{¶ 18} The trial court repeatedly stated the only issue of damages involved the contract price and fair market value of the home. However, in addition to evidence

regarding the purchase price as the fair market value of the home, counsel for appellees introduced evidence related to increased closing costs, increased cost of commissions, and the overall reduction of proceeds between the original and ultimate sales as demonstrated in a comparison of the HUD-1 settlement statements.

{¶ 19} By entry filed August 6, 2015, the trial court awarded appellees damages on their counterclaim in the amount of $15,000, plus costs of the action and postjudgment interest. In doing so, the court determined generally that appellees had been damaged in an amount exceeding jurisdiction of the court and noted that the parties agreed to accept the limit of the court's jurisdiction as an award. Appellant filed a timely appeal to this court.

## II.  ASSIGNMENTS OF ERROR

{¶ 20} Appellant assigns the following two assignments as error:

> 1. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEES.
>
> 2. THE TRIAL COURT ERRED WHEN IT AWARDED APPELLEES $15,000.00 IN DAMAGES.

## III.  DISCUSSION

### A.  First Assignment of Error

{¶ 21} Under the first assignment of error, appellant contends that the trial court erred in granting summary judgment to appellees on their counterclaim because (1) appellees lacked standing, (2) the parties did not have a "meeting of the minds" on all material terms of the purchase contract, or (3) appellees are estopped from asserting a claim for breach of contract. (Appellant's Brief at 17.) For the following reasons, we disagree.

{¶ 22} We review a summary judgment motion de novo. *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992); *Brown* at 711. We must affirm the trial court's judgment if any grounds the

movant raised in the trial court support it. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 23} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 24} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). " 'The requirement that a party seeking summary judgment disclose the basis for the motion and support the motion with evidence is well founded in Ohio law.' " *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997), quoting *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988). Thus, the moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. *Dresher* at 293.

{¶ 25} Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C), which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.* If the moving party has satisfied its initial burden under Civ.R. 56(C), then "the nonmoving party * * * has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

{¶ 26} Regarding the lack of standing, appellant's argument is multi-faceted. First, appellant argues that Authentic Investments and Benjamin Busch were not parties to the real estate purchase contract and, therefore, the trial court is without jurisdiction over

those defendants, and the decision is void.  Second, appellant additionally argues that Ria Busch signed the purchase contract in her individual capacity and was not the owner of the property, so a genuine issue of material fact remains as to whether appellant's performance was excused or whether a contract exists.

{¶ 27} Our review of the record shows that these arguments were not raised to the trial court.  An appellate court generally will decline to hear arguments for the first time on appeal, particularly when these arguments could have easily been raised and addressed by the trial court in the first instance.  *Niehaus v. Columbus Maennerchor*, 10th Dist. No. 07AP-1024, 2008-Ohio-4067, ¶ 55; *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18.

{¶ 28} Appellant attempts to create a caveat to waiver of these issues by aligning with foreclosure cases which have established that standing to sue is required to invoke the jurisdiction of the court.  Specifically, appellant suggests that "[t]he lack of jurisdiction due to a lack of standing spoken of in [*Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017,] as a precursor to subject matter jurisdiction is an issue that can be raised at any time including for the first time on appeal."  (Appellant's Brief at 12-13.)

{¶ 29} "Generally speaking, standing is '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' "  *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, ¶ 8, quoting *Black's Law Dictionary* 1625 (10th Ed.2014). " 'It is an elementary concept of law that a party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action.' "  *Id.*, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179 (1973).

{¶ 30} In discussing the relationship between standing and jurisdiction in *Schwartzwald*, the Supreme Court of Ohio in *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, clarified that a party's standing or the "party's ability to *invoke* a court's jurisdiction speaks to jurisdiction over a particular case, not subject-matter jurisdiction." (Emphasis sic.)  *Id.* at ¶ 22.  However, "[s]tanding in the jurisdictional sense is distinct from the issue of lack of capacity to sue, which is not jurisdictional."  *Bank of Am., N.A. v. Stewart*, 7th Dist. No. 13 MA 48, 2014-Ohio-723, ¶ 43, citing *Beaver*

*Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, fn. 1; *Mousa v. Mt. Carmel Health Sys.*, 10th Dist. No. 12AP-737, 2013-Ohio-2661, ¶ 13.  "Capacity to sue involves a determination as to whether an individual may properly sue, either as an entity or on behalf of another."  *Stewart* at ¶ 45, citing *Mousa* at ¶ 13.  Pursuant to Civ.R. 9(A):

> It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party.  When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment * * *.

*See also* Civ.R. 8(C) and 12.  Thus, "a capacity challenge is waived if a party does not specifically raise it in his answer."  *Mousa* at ¶ 13.

{¶ 31}  Here, our review of appellant's argument reveals that his standing argument is not jurisdictional but is founded on the parties' alleged lack of capacity to sue and dependent on material facts and issues which he did not properly raise and dispute at the trial court level.  The record shows that, at the trial court level, appellant did not raise or dispute the existence of a valid purchase contract, the capacity of Ria Busch to sign on behalf of Authentic Investments, and the status of Benjamin Busch and Authentic Investments as parties.  Thus, appellant waived issues related to capacity and authority to sue.

{¶ 32}  Even if we were to view appellant's argument as an issue of standing, rather than capacity or authority, we note that appellant does not dispute that at least one of the appellees had standing to sue.  Thus, the trial court properly exercised jurisdiction over the merits of the counterclaim.  *Beaver Excavating Co.* at ¶ 16 ("it is sufficient for purposes of jurisdiction that at least one plaintiff has standing for the claims of the remaining plaintiffs to be heard and the court to proceed to decide the case on the merits").  Considering all the above, appellant's arguments related to standing and jurisdiction of the trial court fail.

{¶ 33}  Regarding the lack of a meeting of the minds as to all material terms of the real estate purchase contract, appellant again argues that the owner of the property was not a party to the contract, which we addressed above, and additionally argues that the

purchase contract lacked an essential term regarding disclosures of appellees' agent's alleged inducement to enter the contract and the variable rate commission as required by R.C. 4735.18(A)(13) and (14).

{¶ 34} The basic elements of contract formation are mutual assent, typically manifested through an offer and acceptance, and consideration or its substitute. Section 4.01 of <u>Understanding Contracts</u> (3d Ed.2014). Under some circumstances, missing terms may reveal the parties did not intend to be bound, undermining contract formation. Section 4.11 of <u>Understanding Contracts</u> (3d Ed.2014).

{¶ 35} Our review of appellant's memorandum contra to appellees' motion for summary judgment shows that appellant did not challenge either that a meeting of the minds occurred between the parties or that a contract was formed. Rather, appellant assumed an enforceable contract, focused on its interpretation, and disputed who breached. The closest argument aligning with his assignment of error asserts that appellees did not use good faith in "filling any gap in the contract," but this argument does not challenge formation of the contract. (Memo. Contra at 7.) Considering the above, appellant waived review of this argument on appeal, and we decline to address the argument in the first instance. *Niehaus* at ¶ 55; *Quarterman* at ¶ 18.

{¶ 36} Appellant's estoppel argument meets the same fate. Appellant specifically argues that appellees are precluded from maintaining a breach of contract claim because their own actions led to the failure of the sale to appellant and caused their own damages, and they sought to have appellant sign a fraudulent HUD settlement statement. As with the previously considered arguments, appellant did not assert estoppel to the trial court. Civ.R. 8(C) (defendant must set forth affirmative defense of estoppel in the answer); Civ.R. 12(H) (set forth every defense in the responsive pleading); *Niehaus*; *Quarterman*. As such, appellant's estoppel argument is waived.

{¶ 37} Accordingly, appellant's first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 38} Under the second assignment of error, appellant contends that the trial court erred in awarding appellees $15,000 in damages. Specifically, appellant argues that the court erred because it applied the incorrect measure of damages for a breach of a real estate purchase contract by awarding special damages to appellees exceeding the general

measure of damages.[2]  Appellant additionally asserts that the trial court's award shows that it improperly based its determination on the difference in proceeds between the sales as shown on the respective HUD statements.

{¶ 39} Appellees counter that a trial court may award damages such as closing costs and commission differences, and sufficient evidence here supports the award of at least $15,000 in damages.  According to appellees, the grand total of compensable damages is $15,375 after taking into account the $6,500 difference in the purchase prices, the $5,275 difference in commissions, the $4,100 difference in closing costs, and the deduction of $500 in escrow.

{¶ 40} An appellate court reviews a question of law challenging the trial court's measure of damages de novo.  *Outer Space Signs, LLC v. Clagg*, 4th Dist. No. 12CA11, 2013-Ohio-4350, ¶ 7.  Where the amount of the award of damages is in dispute, as long as competent, credible evidence supports the award, the decision of the trier of fact may not be overturned on appeal.  *Whitt Sturtevant, LLP v. NC Plaza LLC*, 10th Dist. No. 14AP-919, 2015-Ohio-3976.

{¶ 41} The general measure of damages when a buyer defaults on a real estate purchase contract is the difference between the original contract price and the fair market value of the property at the time of the breach.  *Mildred Hine Trust* at ¶ 13, quoting *Peterman v. Dimoski*, 1st Dist. No. C-020116, 2002-Ohio-7337, ¶ 4.  The party seeking damages from the breach of the purchase contract must present "sufficient evidence that the resale price was the true indicator of the fair market value at the time of the breach." *Id.*, quoting *Peterman* at ¶ 20.  "Fair market value is the price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market." *Holmes v. Wilson*, S.D.Ohio No. 2:08-cv-602 (Aug. 2, 2010), citing *Englewood v. Wagoner*, 41 Ohio App.3d 324, 326 (2d Dist.1987).  "Because a number of factors affect whether the resale price represents the fair market value, '[t]he court must look to the

---

[2] In appellant's reply to appellees' appellate brief, appellant raised the issue that appellees did not specifically demand special damages as required by Civ.R. 9(G).  However, our review of the damages hearing transcript shows that appellees argued for special damages such as differences in closing costs and commissions, and appellant argued the exclusion of special damages because they were unforeseeable and speculative but did not raise the Civ.R. 9(G) argument in his original brief to the court.  It is improper to use a reply brief to raise a new issue.  *Fisher v. State*, 10th Dist. No. 13AP-38, 2014-Ohio-2280, ¶ 33, quoting *State v. Shedwick*, 10th Dist. No. 11AP-709, 2012-Ohio-2270, ¶ 6.  Accordingly, we will not address appellant's Civ.R. 9(G) argument.

length of time between the breach and resale, the terms of the original contract and the resale, and any evidence as to the stability of the real estate market during the months between the breach and resale, along with any other relevant factors, to determine if the resale price is sufficient evidence of the fair market value of the property on the date of the breach.' " *Mildred Hine Trust* at ¶ 14, quoting *Loft v. Sibcy-Cline Realtors*, 1st Dist. No. C-88044 (Dec. 13, 1989).

{¶ 42} However, where the buyer breaches a real estate purchase contract, the seller is not limited to recovering only the difference between the contract price and the fair market value. *Knight v. Hughes*, 10th Dist. No. 86AP-1106 (Sept. 17, 1987); *Peterman* at ¶ 8. *See also Mildred Hine Trust* at ¶ 8 (seller-plaintiff abandoned its request for consequential or special damages). Instead, "[t]he seller may incur incidental and consequential damages that are not reflected in the standard measure of damage, as for example, expenses in effecting another sale of the property." *Knight.*

{¶ 43} For instance, the seller may recover prejudgment interest on the difference between the contract price and the fair market value at the time of the breach. *Id.*; *Czerniak v. Aziz*, 6th Dist. No. L-10-1211, 2011-Ohio-3112, ¶ 54-55. As to special or consequential damages, the seller may recover those damages that the parties could have reasonably anticipated at the time of contract formation that are causally connected to the breach and that the seller specifically states pursuant to Civ.R. 9(G). *Knight*; *Roesch v. Bray*, 46 Ohio App.3d 49 (6th Dist.1988); *Peterman* at ¶ 8. Aggrieved sellers are entitled to recover the difference between the original real estate agent or broker's commission and the reasonable commission rate incurred on resale. *Holmes*, citing *Peterman* at ¶ 8 (finding the difference between 4 percent original commission rate and 6 percent resale commission rate to be recoverable as special damages); *Saylor v. Eno*, 12th Dist. No. CA2006-07-165, 2007-Ohio-351 (finding the difference between 1.5 percent original commission rate and 4 percent resale commission rate to be recoverable). *See also Czerniak* at ¶ 61. The seller may also recover the whole or equivalent resale commission percentage but only if the seller actually paid the commission on the first defaulted sale. *Knight* (finding sellers could recover resale commission that was the same rate as the original, failed sale where the sellers had to pay the original commission); *Holmes.*

{¶ 44} Where a buyer breaches a real estate purchase contract, the seller may also recover as special damages the difference in closing costs between the original and ultimate sale of the property. *Peterson* at ¶ 10. However, expenses incidental to the seller's continued ownership and management of the property between the failed sale and resale are generally not recoverable as damages. *Czerniak* at ¶ 63-66; *Holmes*, citing *Peterson*; *Roesch*, quoting *Kauder v. Thompson*, 2d Dist. No. 9265 (May 9, 1986) (noting that expenses such as maintenance, utility, and certain resale costs could " 'mount indefinitely to unlimited amounts' " which could subject a breaching party to liability "for months or even years on end"). Furthermore, as in all contract cases, the nonbreaching party to a real estate purchase contract has a duty to mitigate and may not recover for damages that reasonably could have been avoided. *Mildred Hine Trust* at ¶ 20-23.

{¶ 45} Here, the trial court awarded appellees the agreed cap of $15,000 plus costs of the action and postjudgment interest. The entry simply states that appellees have been damaged in an amount that exceeds $15,000, without providing either the actual amount of damages the court believed appellees suffered or any information about how the court arrived at the greater-than-$15,000 number. It is clear that the trial court did not only use the difference between the original contract price and the fair market value at the time of breach in calculating the amount of damages, since that number, at maximum, would be $6,500—the price difference between the original contract of $280,000 and the resale price of $273,500. Contrary to appellant's argument, no error rises from this alone because, as outlined above, where a buyer breaches a purchase contract, a seller is not limited to the difference in the original contract value and the fair market value of the property at the time of breach. Furthermore, appellant presents us with nothing more than a theory that the trial court used a flat comparison of the sale proceeds on the HUD-1 forms to arrive at the amount of damages. Therefore, appellant has not met his burden on appeal in demonstrating that an error occurred regarding the measure of damages used by the trial court. *Watkins v. Holderman*, 10th Dist. No. 11AP-491, 2012-Ohio-1707, ¶ 11, citing *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2; App.R. 9 and 16(A)(7).

{¶ 46} Appellant's assignment of error as stated additionally challenges the amount of the damage award. Appellees argue that the amount of damages supported by

the evidence is $15,375.  However, to arrive at this amount, appellees incorporate closing costs equaling $4,100, when only $2,500 of this total is attributable to closing costs while the remaining $1,600 is attributable to a cost to remedy an item found during inspection. As previously discussed, maintenance items are generally not compensable in a breach of real estate purchase contract claim.  Without the $1,600, the grand total of damages would not reach the $15,000 threshold, at least under appellees' calculation.

{¶ 47} In some circumstances, "[t]he trial court must set forth the basis for its decision with sufficient detail to allow proper appellate review." *Friesen v. Friesen*, 10th Dist. No. 07AP-110, 2008-Ohio-952, ¶ 39.  *See also Infinite Sec. Solutions, L.L.C. v. Karam Properties II*, 143 Ohio St.3d 346, 2015-Ohio-1101, ¶ 29 ("Neither the parties nor a reviewing court should have to review the trial court record to determine the court's intentions.  Rather, the entry must reflect the trial court's action in clear and succinct terms.").  Because we cannot tell from the trial court decision how it arrived at its calculation or whether it included the $1,600 cost to remedy an item in deciding that the total damages surmounted $15,000, we remand this matter to the trial court to recalculate the amount of damages consistent with this decision and articulate what the damages amount includes.

{¶ 48} Accordingly, appellant's second assignment of error is sustained to the extent that it challenges the trial court's calculation of the amount of the award.

## IV. CONCLUSION

{¶ 49} Having overruled appellant's first assignment of error and sustained appellant's second assignment of error, we hereby affirm in part and reverse in part the judgment of the Franklin County Municipal Court and remand this matter to the trial court for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded with instructions.*

DORRIAN, P.J., and KLATT, J., concur.
_____