[Cite as *2454 Cleveland, L.L.C. v. TWA, L.L.C.*, 2020-Ohio-362.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| 2454 Cleveland, LLC, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-157 |
| v. | : | (C.P.C. No. 17CV-6605) |
| TWA, LLC, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 4, 2020

**On brief:** *Omar Tarazi*, for appellee. **Argued:** *Omar Tarazi.*

**On brief:** *Strip, Hoppers, Leithart, McGrath & Terlecky Co., L.P.A.,* and *A.C. Strip*, for appellant. **Argued:** *A.C. Strip.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, TWA, LLC, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, 2454 Cleveland, LLC, on its claim for breach of contract and awarding $50,000 in damages. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellant owned real estate located at 6380 Nicholas Drive in Columbus, Ohio ("the Property"). On June 14, 2017, appellee made an offer to purchase the Property using a form real estate document ("June 14th purchase offer"). Appellee offered to pay $900,000 for the Property, with appellee putting down 40 percent of the purchase price and obtaining financing for the remainder. The offer also included contingencies, including an inspection contingency providing that appellee would have 30 days after acceptance of the offer to have the Property inspected. The offer stated that if appellee did not provide

written notice to appellant within the relevant time periods that the contingencies were satisfied or that appellee wished to terminate the transaction, the contingencies would be deemed waived. The offer provided for a closing date of August 31, 2017, or within 20 days of all contingencies being removed.

{¶ 3} Appellant responded on June 19, 2017, with a counteroffer ("June 19th counteroffer"), accepting the terms of the June 14th purchase offer with the following changes: (1) a purchase price of $975,000, (2) the Property being sold "as is," (3) appellant paying prorated taxes and assessments through the date of closing, but not retroactive taxes or assessments after closing, and (4) a closing date of July 31, 2017. On June 22, 2017, appellee responded with another counteroffer ("June 22nd counteroffer"), with the following changes to the June 14th purchase offer: (1) a purchase price of $975,000, (2) the purchase being contingent on an inspection of the Property, (3) appellant paying prorated taxes and assessments through the date of closing, but not retroactive taxes or assessments after closing, and (4) a closing date of July 31, 2017 with the option for one 15-day extension to be granted if requested. That same date, appellant accepted the June 22nd counteroffer by initialing and signing the counteroffer document.

{¶ 4} After an inspection of the Property was conducted, appellee sent a proposed contract addendum on July 11, 2017, using a form document, requesting a reduction in the purchase price to $950,000 ("July 11th addendum"). Appellant responded on July 14, 2017 indicating it would agree to a new purchase price of $965,000 provided that appellee would agree to waive all contingencies, appellee's earnest money deposit would be non-refundable to be applied to the purchase price at closing, and that closing would be completed on or before July 28, 2017. On July 17, 2017, appellee responded with another proposed contract addendum ("July 17th addendum") agreeing to a purchase price of $965,000 and indicating it was satisfied with any contingencies related to the property inspection, and that all other terms and conditions from the June 14th purchase offer would remain the same. On July 19, 2017, appellant responded by sending a termination notice, indicating it did not accept the terms contained in the July 17th addendum and that it deemed the contract for purchase of the Property to be terminated. That same day, appellant entered into a contract to sell the Property to another entity, Todd Real Estate, Inc., for $1,025,000.

{¶ 5}   Appellee filed a complaint in the Franklin County Court of Common Pleas asserting claims for breach of contract, breach of the duty of fair dealing, and fraudulent inducement. Appellee alleged the parties had a contract for sale of the Property that appellant breached by unilaterally terminating it. Appellee moved for partial summary judgment on its breach of contract claim, asserting the parties had entered into a contract for sale of the Property based on the June 14th purchase offer, as modified by the June 22nd counteroffer, and that there was no genuine issue of material fact as to whether appellant breached the contract by unilaterally terminating it on July 19, 2017, and entering into a contract for sale of the Property to Todd Real Estate, Inc. Appellant also filed a motion for summary judgment, arguing there was no contract between the parties because they never came to a meeting of the minds on the essential terms of the purchase.

{¶ 6}   In June 2018, the trial court issued a judgment granting appellee's motion for partial summary judgment and denying appellant's motion for summary judgment. The court concluded the parties entered into a contract for sale of the Property, based on the June 14th purchase offer, the June 19th counteroffer, and the June 22nd counteroffer, and the subsequent proposed contract addendums did not constitute termination of that contract. The court further concluded appellant lacked authority to unilaterally terminate the contract prior to the expiration of the contingencies and that by doing so appellant breached the contract. In January 2019, the trial court conducted a damages hearing, and subsequently issued a decision concluding that appellee's damages were $50,000, determined by the difference between the contract price ($975,000) and the subsequent sale price of the Property to Todd Real Estate, Inc. ($1,025,000). The trial court combined its decision on the issue of damages with its earlier decision and entered a final judgment granting summary judgment in favor of appellee on the breach of contract claim in the amount of $50,000, plus interest.

## II. Assignments of Error

{¶ 7}   Appellant appeals and assigns the following two assignments of error for our review:

> [I.] The trial court erred when it granted partial summary judgment to the Appellee and denied the summary judgment motion of Appellant on the issue of whether an enforceable contract existed.

[II.] The trial court erred in determining damages when it used an arbitrary measure of damages for a breach of a real estate contract by seller.

## III. Analysis

### A. Determination that Appellant Breached a Contract With Appellee

{¶ 8} Appellant asserts in its first assignment of error the trial court erred by granting appellee's motion for partial summary judgment on the issue of breach of contract and denying its motion for summary judgment on all claims. We review a grant of summary judgment under a de novo standard. *Capella III, LLC v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate where "the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Capella III* at ¶ 16, citing *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6. In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8.

{¶ 9} The trial court concluded that appellant entered into a contract to sell the Property to appellee and appellant breached that contract through its July 19, 2017 notice of termination. The elements of a contract include an offer, acceptance, contractual capacity, consideration, a manifestation of mutual assent, and legality of purpose. *You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 17AP-426, 2018-Ohio-4838, ¶ 19. A meeting of the minds as to the essential terms of a contract is a requirement to enforcing the contract. *Id.* "In order to establish a claim for breach of contract, the plaintiff must show the existence of a contract, performance by the plaintiff under the terms of that contract, breach by the defendant, and damage or loss to the plaintiff." *CosmetiCredit, LLC v. World Fin. Network Natl. Bank*, 10th Dist. No. 14AP-32, 2014-Ohio-5301, ¶ 13. The existence of a contract and its meaning are questions of law. *You* at ¶ 20.

{¶ 10} Based on our review of the record, we find that appellee's June 14th purchase offer, as modified by appellee's June 22nd counteroffer and accepted by appellant, constituted a contract. All essential elements of a contract were present: appellee made an offer to purchase the Property, which was specifically identified, appellant accepted that offer, and the agreement involved consideration, in the form of a $975,000 payment for the Property. Thus, as of June 22, 2017, when appellant accepted the June 22nd counteroffer, the parties had a contract for sale of the Property.

{¶ 11} Pursuant to the property inspection contingency included in the contract, appellee had 30 days after the offer was accepted to have the property inspected. Under the terms of the contract, appellee could give written notice within that same 30-day period that the contingencies had been satisfied or that appellee wished to terminate the contract. If appellee failed to do so, the contingencies would be deemed to have been waived. Therefore, appellee had until July 22, 2017 to have the Property inspected and notify appellant that the contingencies were satisfied or that it wished to terminate the contract. The agreement provided that the transaction would close no later than July 31, 2017 unless appellee requested a 15-day extension, which appellant was obligated to grant. As of July 19, 2017, when appellant sent its termination notice, the time for appellee to act under the inspection contingency had not expired.

{¶ 12} Appellant argues the July 11th addendum constituted a rejection of the parties' agreement and a counteroffer by appellee. Because we have concluded there was a contract for sale of the Property as of June 22, 2017, appellant appears to effectively argue that the July 11th addendum was a repudiation of the existing contract and an attempt to negotiate a new contract on different terms. Repudiation of a contract must be expressed in clear and unequivocal terms. *Haman Ents. Inc. v. Sharper Impressions Painting Co.*, 10th Dist. No. 15AP-50, 2015-Ohio-4967, ¶ 23. "A mere request for a change in terms or for cancellation does not constitute a repudiation." *Id.* Appellant cites language in the July 11th addendum stating it would supersede the contract and claims that use of the term "supersede" indicated appellee sought to renegotiate the parties' agreement, rather than simply modify the existing agreement. However, the language of the July 11th addendum indicated it would only supersede any *conflicting provisions* in the contract, thus implicitly acknowledging the existing agreement formed by the June 14th purchase offer, as modified

by the June 22nd counteroffer. Under these circumstances, we find the July 11th addendum did not constitute a repudiation of the contract by appellee or a notice of termination by appellee under the contingency provisions of the contract. As of July 19, 2017, when appellant sent its notice of termination, the parties had a binding contract which did not include provisions permitting appellant to unilaterally terminate the contract. Therefore, appellant's July 19, 2017 termination notice constituted a breach of contract.

{¶ 13} Appellant further argues it was excused from performing under the contract because appellee did not secure financing for a portion of the purchase price, as provided in the June 14th purchase offer. Appellee attached to its complaint a commitment letter from a bank arranging for financing of the transaction. Appellant argues this letter was insufficient because it was not signed by appellee until July 19, 2017, which was the same day the acceptance window for the July 17th addendum closed. However, under the terms of the contract the sale would not close until July 31, 2017. Because nearly two weeks remained until the closing date, appellee had additional time to secure financing before closing. Moreover, appellee's owner testified at the damages hearing that the company had sufficient cash to purchase the Property if there were any problems with financing.

{¶ 14} Based on our review of the record, we conclude the trial court did not err by granting appellee's motion for summary judgment because there was no genuine issue of material fact as to whether the parties had a contract for sale of the Property and whether appellant breached that contract by terminating it and selling the Property to another entity.

{¶ 15} Accordingly, we overrule appellant's first assignment of error.

## B. Determination of Damages for Breach of Contract

{¶ 16} Appellant claims in its second assignment of error the trial court erred in determining the damages due to appellee. The amount of damages to be awarded in a breach of contract action is a factual issue; therefore, it is within the factfinder's province to determine the amount of damages to be awarded. *Mid Am. Constr., LLC v. Univ. of Akron*, 10th Dist. No. 18AP-846, 2019-Ohio-3863, ¶ 88. "[A]ppellate courts review an award of damages in a bench trial under the manifest-weight-of-the-evidence standard." *Id.* Under the manifest-weight standard, we must determine whether some competent,

credible evidence supports the trial court's damages award. *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. No. 12AP-647, 2013-Ohio-3890, ¶ 35.

{¶ 17} One measure of damages for breach of a real estate contract is the difference between the original contract price and the fair market value of the property at the time of the breach. *Triangle Properties, Inc. v. Homewood Corp.*, 10th Dist. No. 12AP-933, 2013-Ohio-3926, ¶ 46. *See also Alternatives Unlimited-Special* at ¶ 29-31 (discussing expectation and reliance damages for breach of contract). "It has been held that when the sale of real estate after a breach of contract is made within a reasonable time and at the highest price obtainable after the breach, it is evidence of the market value on the date of the breach." *Triangle Properties* at ¶ 46, citing *Roesch v. Bray*, 46 Ohio App.3d 49, 50 (6th Dist.1988). *See also Father's House Internal., Inc. v. Kurguz*, 10th Dist. No. 15AP-1046, 2016-Ohio-5945, ¶ 19 (noting the general rule that a seller may recover the difference between the contract price and the fair market value of property at the time of the breach of contract).

{¶ 18} The trial court concluded the appropriate measure of damages in this case was the difference between appellee's contract price to purchase the Property and the fair market value of the Property at the time of the breach. Appellee attached to its complaint a copy of a real estate purchase contract dated July 17, 2017, and signed by appellant on July 19, 2017, providing that Todd Real Estate, Inc. would purchase the Property from appellant for $1,025,000. Appellant and appellee stipulated to the accuracy of the contract. The trial court relied on the contract between appellant and Todd Real Estate, Inc. to establish the fair market value of the Property at the time of the breach, asserting it was a sale on the open market within two weeks of the breach of contract. The court held appellee was entitled to the difference between its contract price with appellant ($975,000) and the contract price between appellant and Todd Real Estate, Inc. ($1,025,000) and, thus, awarded appellee $50,000 in damages.

{¶ 19} Appellant argues the trial court erred by relying on the sale price of the Property to Todd Real Estate, Inc. as the fair market value of the property without any other evidence that this was a true indicator of fair market value at the time of the breach of contract. Citing this court's decision in *Mildred Hine Trust v. Buster*, 10th Dist. No. 07AP-277, 2007-Ohio-6999, appellant argues appellee failed to satisfy the burden of establishing

that the subsequent sale price was the fair market value of the property at the time of the breach.

{¶ 20} *Hine Trust* involved a scenario where prospective buyers rescinded an offer to purchase a residential property, which had been accepted by the seller, and the property ultimately sold for a lower price than the original bid. *Hine Trust* at ¶ 6. The seller sued the prospective buyers to recover the difference between their bid and the resale price. The trial court granted summary judgment in favor of the seller and awarded damages equal to the difference between the original contract price and the resale price. *Id.* at ¶ 8. On appeal, this court noted that, as a general rule, Ohio courts held that a party seeking to recover damages needed to present sufficient evidence to establish that a resale price was a true indicator of fair market value at the time of a breach. *Id.* at ¶ 13. Accordingly, Ohio courts held that a trial court generally erred by simply awarding the difference between an original contract price and a resale price on the assumption that the resale price constituted the fair market value of the property. *Id.* at ¶ 14. The court noted it was necessary to consider factors such as " 'the length of time between the breach and resale, the terms of the original contract and the resale, and any evidence as to the stability of the real estate market during the months between the breach and resale, along with any other relevant factors, to determine if the resale price is sufficient evidence of the fair market value of the property on the date of the breach.' " *Id.*, quoting *Loft v. Sibcy-Cline Realtors*, 1st Dist. No. C-880446 (Dec. 13, 1989).

{¶ 21} Although the seller in *Hine Trust* submitted only the settlement statement from the resale of the property to establish the fair market value, this court affirmed the trial court's damages award. The court held that the seller satisfied its burden of proof by submitting the resale settlement statement because the resale occurred as a result of competitive bidding within one month of the breach on terms identical to those offered in the original contract. *Hine Trust* at ¶ 16. Thus, the court effectively found that under those circumstances the resale settlement statement was sufficient and independent evidence was not necessary to establish the fair market value of the property.

{¶ 22} In the present case appellee only submitted evidence of the subsequent sale price of the Property to Todd Real Estate, Inc. and did not provide any independent appraisal or assessment of the fair market value of the Property at the time of the breach.

Appellant claims this was insufficient to satisfy the burden of establishing that the subsequent sale price was a true indicator of the fair market value of the Property. As in *Hine Trust*, however, the subsequent sale of the Property in this case occurred close in time to the breach of contract, with appellant accepting the subsequent purchase offer the same date it notified appellee it was terminating the contract. The terms of both contracts were similar, with appellant due to receive the purchase price in cash at closing, although the financing details of each transaction were different. The trial court concluded that subsequent sale represented the fair market value of the Property because it occurred on the open market shortly after the breach of contract. Thus, similar to *Hine Trust*, in awarding damages the trial court considered the relevant factors of timing and terms in ascertaining whether the subsequent sale price established the fair market value of the Property. Applying the manifest weight standard, we conclude the subsequent sale contract constituted competent, credible evidence to support the trial court's damage award.

{¶ 23} Accordingly, we overrule appellant's second assignment of error.

## IV. Conclusion

{¶ 24} For the foregoing reasons, we overrule appellant's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and KLATT, J., concur.